UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MR. MUDBUG, INC.                                    CIVIL ACTION

VERSUS                                              NO: 15-5265

BLOOMIN BRANDS, INC.                                SECTION "H"(4)

## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment (Doc. 95). For the following reasons, the Motion is GRANTED IN PART.

## BACKGROUND

Plaintiff Mr. Mudbug, Inc. d/b/a MMI Culinary Services ("MMI") manufactures food products such as soups, sauces, and salad dressings. Defendant Bloomin Brands, Inc. ("BBI") operates multiple national and international restaurant chains. For a period of approximately eight years, the parties maintained a business relationship in which Plaintiff produced pre-prepared foods for Defendant. Plaintiff alleges that it expanded its production facilities twice to accommodate Defendant's orders, particularly in response to what Plaintiff alleges was a contract to supply 28 million pounds of salad

1

dressings to Defendant ("the Dressing Contact").[1] However, for reasons that are disputed, Defendant began to award fewer contracts to MMI following the expansions. By December of 2014, the business relationship had been terminated entirely.

On September 25, 2015, Plaintiff filed a state court petition on open account against Defendant for the payment of two invoices totaling $242,668.83.[2] Plaintiff alleges that invoice number 1344, dated November 14, 2013 has an outstanding balance of $2,956.56, and that invoice number 5943, dated March 13, 2015, has an outstanding balance of $239,712.27.[3] Defendant removed the suit to this Court and asserted a counterclaim against Plaintiff for redhibition and breach of contract to supply quality products and ingredients.[4] Plaintiff then amended its Complaint to add claims for breach of contract, detrimental reliance, and bad faith based on Defendant's alleged breach of the Dressing Contract and the resulting lost profits and expansion costs incurred.[5] The Court ultimately dismissed Plaintiff's bad-faith claims with prejudice.[6] The Court also granted Defendant's request to voluntarily dismiss its counterclaim.[7] Accordingly, the only claims remaining in this action are Plaintiff's claims for payment on open account relating to the two invoices, and for breach of contract and detrimental reliance stemming from the alleged Dressing Contract.

Defendant now moves for summary judgment on all but $35,027.29 of Plaintiff's open account claim, arguing that much of the product identified on

---

[1] Doc. 6 at 3.
[2] Doc. 1-3 at 2–3.
[3] Doc. 1-3 at 3; *see also* Doc. 6 at 4–5 (asserting the same claims in Plaintiff's First Amended Complaint).
[4] Doc. 4 at 4–5.
[5] Doc. 6 at 5–9.
[6] *See* Doc. 30.
[7] Doc. 72.

2

the invoices either does not exist or was previously rejected by Defendant. Defendant also moves for summary judgment on Plaintiff's breach of contract and detrimental reliance claims, arguing that Plaintiff has failed to produce evidence showing the contract existed or that there was a promise made on which it was reasonable for Plaintiff to rely. Plaintiff opposes the Motion.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[8] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[10] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[11] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[12] "In response to a properly supported motion for summary judgment, the nonmovant must

---

[8] Fed. R. Civ. P. 56 (2012).
[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[10] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[11] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[12] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[13] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[14] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[15]

## LAW AND ANALYSIS

Because this case rests on diversity jurisdiction, Louisiana substantive law applies to Plaintiff's claims.[16] The Court will address each in turn.

### I. Plaintiff's Open Account Claim

An open account is "any account for which a part or all of the balance is past due."[17] In order to recover on an open account, "the creditor must first prove the account by showing that it was kept in the course of business and by introducing supporting testimony regarding its accuracy."[18] The burden then "shifts to the debtor to prove the inaccuracy of the account or to prove that the debtor is entitled to certain credits."[19]

In its open account claim, Plaintiff asserts that Defendant has not paid $2,956.56 from invoice number 1344 and $239,712.27 from invoice number

---

[13] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[14] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[15] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[16] Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc., 756 F.3d 825, 834 (5th Cir. 2014).
[17] La. Rev. Stat. § 9:2781(D).
[18] Bisso & Miller, LLC v. Marsala, 215 So. 3d 469, 472 (La. App. 5 Cir. 2017); *see also* CACV of Colo., LLC v. Spiehler, 11 So. 3d 673, 675 (La. App. 3 Cir. 2009); Newman v. George, 968 So. 2d 220, 224 (La. App. 4 Cir. 2007).
[19] *Bisso & Miller*, 215 So. 3d at 472.

5943.[20] Plaintiff submits as evidence copies of the invoices and an affidavit of Plaintiff's Chief Operating Officer, Anthony D'Angelo, who states that the records referred to in his affidavit, which include the invoices, are business records.[21] Plaintiff has therefore met its initial burden at this stage to recover on the open account.

Defendant inspected Plaintiff's storage facility and discovered that many of the items billed to Defendant on the invoices did not exist. Defendant argues that the invoices are incorrect in the following manner:[22]

a) Only 794 cases of lobster bisque were present in the storage facility, rather than 1,457 listed on the invoice.

b) Of the cases of lobster bisque actually present, 775 had previously been rejected by Defendant.[23]

c) Only 905 cases of crab stuffing were present in the storage facility, rather than the 909 listed on the invoice.

d) Of the cases of crab stuffing actually present, 737 had previously been rejected by Defendant.[24]

e) Zero cases of Kid Mac sauce were present in the storage facility, rather than the 182 listed on the invoice.

f) Zero drums of mustard were present in the raw ingredients storage facility, rather than the six listed on the invoice.

---

[20] Doc. 6 at 4–5.
[21] Docs. 100-1 at 1–7, 10–12.
[22] Defendant also argues for the first time in its reply brief that Plaintiff has failed to offer evidence for why Defendant should have to pay for missing product. Doc. 107 at 3. To the extent that Defendant is arguing that Plaintiff failed to carry its initial burden to prove that the open account record was kept in the usual course of business, the Court will not consider arguments raised for the first time in a reply. *See* Gillaspy v. Dallas Indep. Sch. Dist., 278 F. App'x 307, 315 (5th Cir. 2008).
[23] Doc. 93-6 at 2.
[24] Doc. 93-6 at 2.

g) Only 22 cases of mustard were present in the raw ingredients storage facility, rather than the 69 listed on the invoice.

h) Plaintiff explicitly waived its claim for payment for $21,879 of Magic Spice, Tangy Tomato.

i) Plaintiff was not entitled to payment for the miscellaneous deductions line item.

To support these arguments, Defendant submits affidavits from employees who counted the inventory at the storage facility and who are familiar with the records containing the product rejections, as well as associated documents supporting their assertions.[25]

In response, Plaintiff submits the D'Angelo affidavit which states that the missing lobster bisque (point a), the missing mustard (points f and g), and the missing crab stuffing, (point c), were manufactured, but were later discarded because the products passed their expiration dates, became damaged, or degraded.[26] The affidavit further states that most of the missing Kid Mac sauce (point e) was actually in the warehouse at the time of the inspection but was overlooked in error, and that the remaining product was discarded prior to the inspection because it passed its expiration date.[27] This evidence, thin as it is, raises an issue of material fact as to whether the missing product was ever purchased or manufactured.

The D'Angelo affidavit also states that the lobster bisque (point b) and crab stuffing (point d) were not defective, but instead wrongly rejected because Defendant employed the incorrect testing methods.[28] However, Plaintiff produces no evidence that it objected to the rejections at the time. Plaintiff

---

[25] Docs. 93-3, 93-6.
[26] Doc. 100-1 at 2–4.
[27] Doc. 100-1 at 4.
[28] Doc. 100-1 at 3.

6

cannot, years after its product was rejected without protest, seek payment for that product on open account. Accordingly, summary judgment is granted that Defendant does not owe Plaintiff for 775 of the invoiced cases of lobster bisque and 737 of the invoiced cases of crab stuffing.

Defendant cited to no evidence showing that it did not owe Plaintiff for the erroneous deductions line on invoice number 5943 (point i) and so summary judgment as to this amount is denied.

With regard to the Magic Spice, Tangy Tomato (point h), the D'Angelo affidavit states that D'Angelo only agreed to waive payment on the item from another entity, not from Defendant.[29] D'Angelo's emails, however, directly contradict this assertion. In an email exchange with D'Angelo, Defendant said that the Tangy Tomato Spice item "should not be BBI's liability based off the conversation that was had in Tampa."[30] D'Angleo then responded, "PFG has been billed for the tartar related ingredients and both those and the Tangy Tomato Spice will be remove [sic] from the list."[31] When told that the item should not be billed to Defendant Bloomin Brands, Inc., Plaintiff removed it. The Court concludes that no reasonable jury could find in favor of Plaintiff on this point and so Defendant is entitled to summary judgment that it does not owe this line item.

Accordingly, Defendant's motion for summary judgment on the open account is granted with respect to the $21,879.00 billed for Magic Spice, the $57,210.50 of rejected lobster bisque, and the $59,770.70 of rejected crab stuffing, and is denied in all other respects.[32]

## II. Plaintiff's Breach of Contract Claim

---

[29] Doc. 100-1 at 2.
[30] Doc. 93-5.
[31] Doc. 93-5.
[32] The invoice price of lobster bisque was $73.82 per case, and crab stuffing was $81.10.

7

"Under Louisiana law, '[t]he essential elements of a breach of contract claim are (1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee.'"[33] "The party claiming the existence of a contract has the burden of proving that the contract was perfected between himself and his opponent."[34] "A contract is formed by the consent of the parties established through offer and acceptance."[35] "[I]n order for there to be a binding contract of sale, there must be agreement as to the thing sold, the price and consent of the parties to the sale."[36]

Contracts may be formed by oral agreement, but those for a price of more than five hundred dollars "must be proved by at least one witness and other corroborating circumstances."[37] A plaintiff may serve as its own witness.[38] The corroborating circumstances need only be general, but cannot come only from the plaintiff itself.[39]

Defendant argues that Plaintiff can produce no evidence that the parties actually formed the Dressing Contract. Because it is Plaintiff's burden to prove the existence of the contract at trial, Plaintiff must point to evidence in the record sufficient to raise an issue of fact material to that question. Plaintiff points to a) the affidavits of Michael Maenza and Anthony D'Angelo, officers of

---

[33] Boudreaux v. Flagstar Bank FSB, 623 F. App'x 235, 237 (5th Cir. 2015) (quoting Favrot v. Favrot, 68 So. 3d 1099, 1108–09 (La. App. 4 Cir. 2011)) (per curiam).
[34] Diversified Marine Servs., Inc. v. Jewel Marine, Inc., 222 So. 3d 1008, 1014 (La. App. 1 Cir. 2017) (citing LA. CIV. CODE art. 1831).
[35] LA. CIV. CODE art. 1927.
[36] Rutgers, State Univ. v. Martin Woodlands Gas Co., 974 F.2d 659, 661 (5th Cir. 1992) (citing LA. CIV. CODE art. 2464); see also LA. CIV. CODE art. 2623 ("A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates.").
[37] LA. CIV. CODE arts. 1846, 1927.
[38] Meredith v. La. Fed'n of Teachers, 209 F.3d 398, 403 (5th Cir. 2000).
[39] See id.; Diversified Marine Servs., 222 So. 3d at 1014; Kilpatrick v. Kilpatrick, 660 So. 2d 182, 185 (La. App. 2 Cir. 1995) (gathering cases).

Plaintiff corporation, b) "the hundreds" of purchase orders and emails sent by Defendant to Plaintiff, and c) the extended business relationship between Plaintiff and Defendant.[40]

The affidavit of Anthony D'Angelo says nothing about the existence of the Dressing Contract.[41] The affidavit of Michael Maenza, Plaintiff's CEO, states the following:

1) that Plaintiff "freely" gave intellectual property and expertise to the "collaborative effort" with Defendant "without any compensation other than BBI's commitment to reward MMI with the opportunity to manufacture the BBI products that MMI helped develop;"[42]

2) that Plaintiff completed a one-million-dollar expansion of its facilities in 2009 after Defendant told Plaintiff that Plaintiff "had the pedigree, licensing, and know how to mass produce BBI's products but that MMI had to expand its plant facility in order to do business with BBI;"[43]

3) that the parties "ventured into a research and development collaboration partnership;"[44]

4) that, "spurred on by commitments from BBI regarding a sizable increase of mass manufactured food products," Plaintiff completed a $16.8 million expansion;[45]

---

[40] Doc. 100 at 19.
[41] *See* Doc. 100-1.
[42] Doc. 100-2 at 3.
[43] Doc. 100-2 at 3.
[44] Doc. 100-2 at 3.
[45] Doc. 100-2 at 3–4.

5) that, "MMI was formally awarded the manufacture of millions of pounds of primarily-cold BBI food products (the 'Dressing Contract'), which confirmed the prior commitments of BBI;"[46]

6) that the "scope" of the Dressing Contract was 29.6 million pounds of product, as show in a spreadsheet from Defendant;[47]

7) that Defendant subsequently revised the commitment down to 22 million pounds and then 11 million pounds, both of which were acceptable to Plaintiff;[48]

8) that Defendant attempted to cease purchasing cold product from Plaintiff;[49] and

9) that Plaintiff's Chief Operating Officer sent a letter to Defendant "informing BBI that MMI could no longer provide cold items in the Dressing Contract at the very low price that had been based on the Dressing Contract volume award without a volume commitment."[50]

Reading Maenza's affidavit in the light most favorable to Plaintiff, it fails to satisfy the requirement that the contract be proved by one witness. Maenza does not actually state that the parties agreed to a purchase contract and does not state that the parties agreed to a definite or determinable price and quantity.[51] At best, Maenza's statement that Plaintiff was "formerly awarded the manufacture" of goods implies that an agreement existed, but offers none of the detail required to prove that a contract was perfected. To the contrary, Maenza states that Defendant unilaterally decreased the quantity of the

---

[46] Doc. 100-2 at 4.
[47] Doc. 100-2 at 4–5. Plaintiff's Amended Complaint alleges that the contract was for 28 million pounds.
[48] Doc. 100-2 at 5.
[49] Doc. 100-2 at 6–7.
[50] Doc. 100-2 at 7.
[51] *See* LA. CIV. CODE arts. 2456, 2464; Conkling v. Turner, 18 F.3d 1285, 1301 (5th Cir. 1994).

Dressing Contract several times and that this was acceptable to Plaintiff. Maenza's affidavit also includes a letter in which Plaintiff tells Defendant that it cannot continue to provide discounted pricing without a volume commitment. Substantial unilateral quantity reductions and an attempt to secure a volume commitment are inconsistent with the existence of a contract and belie Plaintiff's claim.

Even if Maenza's affidavit was sufficient to satisfy the one-witness requirement, Plaintiff also fails to direct the Court to any corroborating evidence not produced by Plaintiff's own actions. The Court notes that, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."[52] Rather, "[t]he party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[53] As corroborating evidence, Plaintiff merely points to "the hundreds of written purchase orders issued by BBI to MMI" and "hundreds of E-mails sent by BBI to MMI that have been produced in discovery."[54] Plaintiff does not refer to specific exhibit numbers or the actual content of any documents. In an abundance of caution, the Court reviewed all documents that Plaintiff attached as exhibits to its Opposition Memorandum. None corroborate the claim that the parties agreed to a twenty-nine million pound supply contract.[55] The best evidence of some agreement is an email from

---

[52] Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).

[53] *Id.* (quoting Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915–16, n.7 (5th Cir. 1992)).

[54] Doc. 100 at 19. At one point Plaintiff also states that the entire business relationship between the parties is corroborating evidence, but that is even less specific than the general references to documents that the Court already finds insufficient.

[55] In fact, many of Plaintiff's documents tend to show that there was no agreement. *See, e.g.*, Doc. 100-2 at 21 (unilaterally revising *estimated* quantities of product required and requesting new prices); Doc. 100-2 at 22–24 (containing Defendant's unsigned, proposed contract for the supply of a single restaurant brand with the stipulation that quantities

11

Defendant informing Plaintiff that, "Bloomin Brands is awarding MMI with approximately 1.2 million pounds of Hot Products (3 items) that represent 42% of the total."[56] However, the email's reference to approximate quantities undermines Plaintiff's claim of a firm volume contract, the stated quantity is far below the amount in Plaintiff's claim, the term "award" is equivocal at best as to any contractual commitment by Defendant, and the email discusses hot products rather than the cold ones Plaintiff claims were the basis of the Dressing Contract.

Furthermore, Defendant's assertion of a counterclaim based on breach of contract and redhibition does not corroborate the existence of the Dressing Contract, as the counterclaim contains no reference to, or specific information about, the volume commitment. The parties certainly formed countless contracts for the sale of goods actually delivered through the course of their business relationship. Defendant's reference to an unspecified contract in a counterclaim does not corroborate Plaintiff's claim that the Dressing Contract existed.

Plaintiff fails to meet the requirements of Rule 56 that it point to evidence creating a question of material fact on the subject of the motion for summary judgment, and Defendant is therefore entitled to summary judgment dismissing Plaintiff's breach of contract claim.

### III. Plaintiff's Detrimental Reliance Claim

Under Louisiana law, "[a] party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying."[57]

---

may change); Doc. 100-2 at 39–40 ("[A]t this juncture, MMI is no longer able to continue providing such deeply discounted prices without a volume commitment.").
[56] Doc. 100-2 at 41.
[57] LA. CIV. CODE art. 1967.

To recover under the theory, a plaintiff must prove, "(1) a representation by conduct or word; (2) made in such a manner that the promisor should have expected the promisee to rely upon it; (3) justifiable reliance by the promisee; and (4) a change in position to the promisee's detriment because of the reliance."[58] "It is difficult to recover under the theory of detrimental reliance, because such a claim is not favored in Louisiana."[59]

Defendant argues that summary judgment in its favor is appropriate because Plaintiff has failed to produce any evidence that Defendant made a promise to Plaintiff, and because regardless of whether a promise was made, Plaintiff would be unreasonable to spend millions of dollars on an expansion in reliance on an oral agreement. The latter question is an issue of fact inappropriate for summary judgment. Louisiana courts have only held that a reliance was unreasonable as a matter of law in a handful of limited circumstances, typically involving an integrated written contract that contradicts the alleged representation or an oral agreement that is required by statute to be in writing.[60]

The former question, whether Plaintiff has adduced sufficient evidence that Defendant actually made a representation on which Plaintiff alleges it relied, is much closer. First, Plaintiff's own argument undermines its claim that Defendant promised to make a certain volume of purchases. Plaintiff

---

[58] *In re* Ark-La-Tex Timber Co., 482 F.3d 319, 334 (5th Cir. 2007). The Court finds Defendant's argument that the promise must be "clear and unambiguous" unconvincing. Defendant cites only to *Wooley v. Lucksinger*, 961 So. 2d 1228, 1239 (La. App. 1 Cir. 2007), which itself relies only on the Louisiana Civil Law Treatise, H. JOHNSON, 18 LA. CIV. LAW TREATISE, CIVIL JURY INSTRUCTIONS, § 19.08 (2001), for the proposition that a promise must be clear and unambiguous. In *Wooley*, the court dismissed a claim for detrimental reliance because the alleged representation was not a promise at all, but rather regulatory action of a state agency. *Wooley*, 961 So. 2d at 1239.

[59] *In re Ark-La-Tex Timber Co.*, 482 F.3d at 334.

[60] *See* Drs. Bethea, Moustoukas & Weaver LLC v. St. Paul Guardian Ins. Co., 376 F.3d 399, 405 (5th Cir. 2004).

argues that it "relied upon representations of BBI that MMI had to enlarge its manufacturing facilities to produce the amount of food products that BBI required," and that Defendant's lack of a specific volume commitment is not relevant to the "issue as to whether or not MMI reasonable [sic] relied upon BBI's representations that MMI needed to enlarge its facilities to accommodate BBI's demands."[61] The representations that Plaintiff identifies are clearly not promises on which a detrimental reliance claim may rest. The statement that Plaintiff would need to expand in order to meet the needs of Defendant is a plain factual declaration. It in no way promises that if Plaintiff did expand, Defendant would fill any of that need from Plaintiff.

Second, the evidence that Plaintiff introduces leads overwhelmingly to the conclusion that Defendant never made any volume commitment at all.[62] Plaintiff cites to a spreadsheet that supposedly shows Defendant's "initial 29,619,071 pound product award in September 2011," but the only references to quantity appear in a column titled "Estimated Annual Volume in Pounds."[63] Nothing in the document contains any promise. Plaintiff also cites to a document that allegedly "show[s] the reduction of the award to 22 million pounds."[64] That document is an email from an employee of Defendant's stating that Defendant previously "supplied an estimate of volume" and then "revising the volume estimates" down to about 22 million pounds.[65] The email goes on to request that Plaintiff "utilize the new volumes . . . to revise all Chef made Pricing" for the relevant period.[66] Far from being evidence of a commitment, the document instead suggests that the parties were engaged in an ongoing

---

[61] Doc. 100 at 20–21.
[62] *See supra* § II.
[63] Doc. 100 at 15.
[64] Doc. 100 at 15.
[65] Doc. 100-2 at 29–29.
[66] Doc. 100-2 at 28

14

negotiation. Plaintiff finally cites to what it claims is a letter drafted jointly by the parties to be given to Plaintiff's bank to support the financing required for Plaintiff's second expansion.[67] The letter states that it "will serve to outline Mr. Mudbug, Inc. proposal [sic] for the products listed below."[68] Thus, the best documentary evidence that Plaintiff can produce of a supposed promise is Plaintiff's own statement that the given volumes are merely a proposal.

Combined with the documents discussed above regarding Plaintiff's contract claim, the evidence before the Court leads to the overwhelming conclusion that Defendant made no promise to Plaintiff that it would make future purchases from Plaintiff. The self-serving and suspiciously circumspect affidavit of Plaintiff's CEO Michael Maenza does state that Defendant made a commitment or "formal award" of the manufacture of millions of pounds of product.[69] This vague language is insufficient to prove the existence of a contract, and while the Court is bound by Fifth Circuit precedent that an oral representation may provide the basis for a detrimental reliance claim, this bare, self-serving affidavit is insufficient to create an issue of material fact that precludes summary judgment. Accordingly, summary judgment dismissing Plaintiff's detrimental reliance is GRANTED.

## CONCLUSION

Defendant's Motion for Summary Judgment on Plaintiff's open account claim is GRANTED with respect to the $21,879.00 billed for Magic Spice and the $116,981.20 of rejected product, and is DENIED in all other respects.

---

[67] Doc. 100 at 15.
[68] Doc. 100-2 at 22–24.
[69] Doc. 100-2 at 3–4.

Defendant's Motion as to Plaintiff's contract claim is GRANTED. Plaintiff's claim for breach of contract is DISMISSED with prejudice.

Defendant's Motion as to Plaintiff's detrimental reliance claim is GRANTED. Plaintiff's claim for detrimental reliance is DISMISSED with prejudice.

New Orleans, Louisiana this 24th day of January, 2018.

_____
**JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE**