UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MR. MUDBUG, INC.                                          CIVIL ACTION

VERSUS                                                    NO: 15-5265

BLOOMIN BRANDS, INC.                                      SECTION "H"(4)


## ORDER AND REASONS

Before the Court is Defendant's Motion for Summary Judgment on Remaining Portions of Open Account Claim (Doc. 123). For the following reasons, the Motion is GRANTED IN PART.


## BACKGROUND

Plaintiff Mr. Mudbug, Inc. d/b/a MMI Culinary Services ("MMI") manufactures food products such as soups, sauces, and salad dressings. Defendant Bloomin Brands, Inc. ("BBI") operates multiple national and international restaurant chains. For a period of approximately eight years, the parties maintained a business relationship in which Plaintiff produced pre-prepared foods for Defendant. Plaintiff alleges that it expanded its production facilities twice to accommodate Defendant's orders, particularly in response to what Plaintiff alleges was a contract to supply 28 million pounds of salad

1

dressings to Defendant ("the Dressing Contact").[1] However, for reasons that are disputed, Defendant began to award fewer contracts to MMI following the expansions. By December of 2014, the business relationship had been terminated entirely.

On September 25, 2015, Plaintiff filed a state court petition on open account against Defendant for the payment of two invoices totaling $242,668.83.[2] Plaintiff alleges that invoice number 1344, dated November 14, 2013 has an outstanding balance of $2,956.56, and that invoice number 5943, dated March 13, 2015, has an outstanding balance of $239,712.27.[3] Defendant removed the suit to this Court.[4] Plaintiff amended its Complaint to add claims for breach of contract, detrimental reliance, and bad faith based on Defendant's alleged breach of the Dressing Contract and the resulting lost profits and expansion costs incurred.[5] The Court dismissed Plaintiff's bad-faith claims with prejudice.[6]

On a motion for summary judgment by Defendant, the Court dismissed Plaintiff's contract and detrimental reliance claims for lack of evidence.[7] The Court also issued summary judgment in favor of Defendant as to part of Plaintiff's claim on open account. Defendant produced evidence that it previously rejected 775 cases of lobster bisque and 737 cases of crab stuffing for poor quality. Because Plaintiff produced no evidence that it disputed the rejections at the time, the Court granted summary judgment to Defendant

---

[1] Doc. 6 at 3.
[2] Doc. 1-3 at 2–3.
[3] Doc. 1-3 at 3; *see also* Doc. 6 at 4–5 (asserting the same claims in Plaintiff's First Amended Complaint).
[4] Doc. 4 at 4–5.
[5] Doc. 6 at 5–9.
[6] *See* Doc. 30.
[7] Doc. 115.

denying Plaintiff's claim as those cases of product.[8] The Court also granted summary judgment denying Plaintiff's claim with regard to the Magic Spice, Tangy Tomato item on the invoices because Plaintiff waived payment for that ingredient.[9]

Defendant now moves for summary judgment on the remainder of Plaintiff's claim on open account. Defendant submits evidence that it also rejected the remainder of the finished food products appearing on the invoices, that Plaintiff waived payment for the invoiced raw ingredients, and that Plaintiff cannot produce any evidence that Defendant is liable for the "miscellaneous deductions" invoice item. Defendant further moves for summary judgment on Plaintiff's claim for attorney fees in connection with the open account claim on the grounds that Plaintiff incorrectly stated the amount due in its Complaint and is therefore ineligible for attorney's fees under the statute on which Plaintiff relies. Plaintiff concedes the attorney's fee issue, but opposes the reminder of Defendant's Motion.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations. . . , admissions, interrogatory answers, or other materials" "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[10] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[11]

---

[8] Doc. 115 at 6–7.
[9] Doc. 115 at 7.
[10] FED. R. CIV. P. 56 (2012).
[11] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[12] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[13] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[14] "In response to a properly supported motion for summary judgment, the nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial."[15] The Court does "not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[16] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[17]

## LAW AND ANALYSIS

### I.  Invoice Amounts For Finished Product

This Court previously held that Plaintiff is not entitled to recover on open account for goods that Defendant rejected without contemporaneous objection

---

[12] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).
[13] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[14] Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
[15] Johnson v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[16] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 393–94 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[17] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

4

from Plaintiff.[18] Defendant now submits the corporate deposition of Plaintiff in which Plaintiff's representative stated that all of the finished product remaining on Plaintiff's invoice was rejected by Defendant.[19] Plaintiff's representative further stated that it did not send invoices to Defendant for the rejected product until approximately two years after the rejection, once the parties' business relationship ended.[20] There is, therefore, no dispute that the remainder of the invoiced finished product was rejected without contest.

In its opposition memorandum, Plaintiff alleges that some of the finished product was in fact accepted by Defendant. Plaintiff points to an email from a Defendant employee listing batch and bag numbers for lobster bisque with an "Approved" status in a third column.[21] However, Plaintiff's representative directly contradicted that assertion during Plaintiff's 30(b)(6) deposition, stating that all of the invoiced lobster bisque had been rejected.[22] Plaintiff offers no explanation for the discrepancy, and therefore this Court will not consider evidence that contradicts Plaintiff's own corporate testimony.[23]

Accordingly, Plaintiff's claim on open account is dismissed with respect to all lobster bisque, crab stuffing, kid mac, and creolaise.

## II. Invoice Amounts for Raw Ingredients

Defendant argues that Plaintiff cannot meet its burden to prove that Defendant is liable for the raw ingredient items on the invoices because Plaintiff failed to timely notify Defendant of the existence of the ingredients

---

[18] *See* Doc. 115 at 6–7.
[19] *See* Doc. 123-3 at 6–7.
[20] Doc. 123-3 at 31–32.
[21] Doc. 125-1.
[22] *See* Doc. 123-3 at 6–8.
[23] *See* Imperial Trading Co. v. Travelers Prop. Cas. Co. of Am., No. 06-4262, 2009 WL 2242380, at *9 (E.D. La. July 24, 2009) ("Numerous district courts have held that a party cannot adduce additional evidence to rebut the testimony of its Rule 30(b)(6) witness when, as here, the opposing party has relied on the Rule 30(b)(6) testimony, and there is no explanation for the difference.").

5

during the parties' agreed wind-down process. The material facts as presented in the parties' memoranda are undisputed. As the parties terminated their business relationship, Defendant agreed to pay for at least some of the raw ingredients unique to Defendant's products that remained in Plaintiff's inventory. On two occasions in July and September of 2014, Defendant informed Plaintiff that Defendant would pay for certain remaining raw ingredients after receiving an invoice from Plaintiff, Plaintiff sent invoices, and Defendant paid.[24]

On September 30, 2014, Defendant again informed Plaintiff of "the steps that will need to be taken to reconcile and make MMI whole."[25] Defendant instructed Plaintiff to send a detailed inventory of its remaining raw ingredients to Defendant. Defendant would review the inventory and request an invoice if Defendant agreed to the amounts and costs. Plaintiff sent invoice number 4017 for raw ingredients to Defendant on October 3, 2014.[26] On October 6, Defendant asked Plaintiff to confirm that the invoice was for all remaining raw materials and that upon payment Defendant would have "zero liability on raw materials" to Plaintiff.[27] Plaintiff replied, "We are verifying today Tom. There may still remain a few items but will let you know as soon as we do."[28] On October 22, 2014, having heard nothing from Plaintiff for two weeks, Defendant paid the invoice.[29]

---

[24] *See* Docs. 123-5, 123-6, 123-7.
[25] Doc. 123-8 at 1.
[26] Doc. 123-10.
[27] Doc. 123-11.
[28] Doc. 123-12.
[29] *See* Doc. 123-13.

On December 31, 2014, Plaintiff sent to Defendant invoices for, *inter alia*, raw ingredients unique to Defendant's products.[30] On January 12, 2015, Defendant disputed the invoices, informing Plaintiff that it considered the October 6 payment to be the final reconciliation for raw ingredients between the parties and that the quantities on the December invoice did not match the inventories that Plaintiff previously provided to Defendant.[31] Plaintiff did not respond until June 3, 2015, at which time Plaintiff re-invoiced Defendant for the raw ingredients contained on the invoice sent on December 31, 2014.[32]

Plaintiff argues that it did not agree to the time limits on the wind-down procedure and instead reserved its right to investigate its inventory and bill Defendant at a later date. There is a question of fact as to the agreement, if any, between the parties regarding final inventory. When Plaintiff sent an invoice rather than a detailed inventory as Defendant requested, Defendant acquiesced and paid the invoice, suggesting that the wind-down procedures were not strictly followed. Also, Plaintiff's email on October 6, 2014 indicated that Plaintiff would verify its inventory and respond to Defendant with the results, it did not indisputably set forth a definite deadline. Finally, although Plaintiff accepted Defendant's payment for the October invoice, Defendant produces no evidence that the payment itself stated that the payment represented full satisfaction of Defendant's liabilities for all raw ingredients.

Defendant argues in the alternative that it does not owe Plaintiff for the glass bottles of wine because Plaintiff unilaterally decided not to use them. Plaintiff cites to its corporate deposition in which Plaintiff's representative

---

[30] Doc. 123-14. At that time, Plaintiff sent invoices numbers 4074 and 4258. Plaintiff would later re-invoice the same goods on invoice number 5943, one of the invoices on which Plaintiff rests the instant open account claim.
[31] Doc. 123-16 at 1.
[32] Doc. 123-17.

stated that the transition away from glass bottles was done with the consent and cooperation of Defendant, and that Defendant knew that there would be glass bottles left over. Therefore, a question of fact exists as to the extent of the agreement between the parties to cover the excess bottles of wine.

Accordingly, Defendant's Motion is denied with respect to Plaintiff's claim on open account is for Dot Seasoning, wine, and mustard.

### III. Invoice Amounts for Miscellaneous Deductions

Invoice number 5943 requests payment from Defendant for $1,176.46 in "miscellaneous deductions that MMI did not authorize."[33] Defendant argues that Plaintiff has failed to produce any evidence that Defendant is responsible for those deductions. Plaintiff's corporate representative testified in its 30(b)(6) deposition that the deductions were made by Performance Food Group ("PFG") and characterized the item as a "dispute with PFG."[34] PFG is a separate entity from Defendant that Defendant used to distribute products manufactured by Plaintiff to Defendant's subsidiary restaurants. Plaintiff does not dispute that the deductions were made by PFG, but argues that the amounts are due from Defendant because PFG was acting as Defendant's agent in making the deductions.

Under Louisiana law, a mandatary may bind a principal to third parties when the mandatary has apparent authority to act on behalf of the principal.[35] Apparent authority is created when the principal makes representations to a third party that the mandatary has authority to act on the principal's behalf.[36]

---

[33] Doc. 123-2 at 3.
[34] Doc. 123-3 at 4–5, 42.
[35] *See* LA. CIV. CODE art. 2989; Barrilleaux v. Franklin Found. Hosp., 683 So. 2d 348, 353–54 (La. App. 1 Cir. 1996) (reviewing the Louisiana law of agency extensively).
[36] *See Barrilleaux*, 683 So. 2d at 354.

A mandatary relationship is not presumed; the party seeking to bind the principal bears the burden of proof.[37]

Plaintiff points to no evidence of representations that Defendant made to Plaintiff establishing PFG's authority to bind Defendant. The only evidence that Plaintiff advances to support its contention is the conclusory assertion by Plaintiff's corporate representative and the practice during the wind-down procedure whereby PFG would pay Plaintiff for remaining inventory and then Defendant would reimburse PFG.[38] Nothing about that relationship suggests that PFG had the right to bind Defendant to third parties. Because Plaintiff admits that the miscellaneous deductions were imposed by an entity other than Defendant and produces no evidence of that entity's apparent authority to bind Defendant, Defendant is not liable for the charge. Accordingly, Plaintiff's claim on open account is dismissed with respect to the miscellaneous deduction item.

## IV. Attorney's Fees

Plaintiff has conceded that it is not due attorney's fees under the open account statute because the amount now due from Defendant is different that the amount that Plaintiff originally claimed.[39] Accordingly, Plaintiff's claim for attorney's fees, is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion is GRANTED IN PART.

Plaintiff's claim on open account is DISMISSED WITH PREJUDICE with respect to the lobster bisque, crab stuffing, kid mac, creolaise,

---

[37] *Id.*
[38] *See* Doc. 125 at 7–8.
[39] *See* Doc. 125 at 8.

9

miscellaneous deductions, and attorney's fees. Plaintiff's claim for Dot Seasoning, wine, and mustard REMAINS.

New Orleans, Louisiana this 5th day of April, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**